**CHADBOURNE & PARKE LLP**
Counsel for the Petitioners
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100
Howard Seife
Andrew Rosenblatt
Francisco Vazquez
Eric Daucher

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re                                                          :
                                                               :
OCTAVIAR ADMINISTRATION PTY LTD,                               :   In a Case Under Chapter 15
                                                               :   of the Bankruptcy Code
                                                               :
Debtor in a Foreign Proceeding.                                :   Case No. 14-
---------------------------------------------------------------- x

**VERIFIED PETITION UNDER CHAPTER 15 FOR
RECOGNITION OF A FOREIGN MAIN PROCEEDING**

Katherine Elizabeth Barnet and William John Fletcher, in their capacity as liquidators (the "Petitioners") of Octaviar Administration Pty Ltd (in liquidation) ("OA") and as duly authorized foreign representatives as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), through their United States counsel, Chadbourne & Parke LLP, respectfully submit this verified petition seeking recognition of a foreign main proceeding. In support thereof, the Petitioners respectfully state as follows:

**PRELIMINARY STATEMENT**

1.  The Petitioners, as foreign representatives of OA, commenced this Chapter 15 case by filing the Petition contemporaneously with, and accompanied by, all certifications, statements, lists and documents required under Chapter 15 and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As set forth below and in (i) the Declaration of Scott

Andrew Atkins, Australian legal counsel to the Petitioners, dated February 28, 2014 (the "<u>Atkins Declaration</u>") and (ii) the Statement of Foreign Representative required by section 1515(c) of the Bankruptcy Code accompanying the Petition:

(a) a foreign proceeding respecting OA was duly commenced in Australia;

(b) OA's former registered office and principal place of business was at 5-7 Hicks Street, Southport, Queensland 4215, Australia;[1]

(c) OA carries out nontransitory economic activity in Australia;

(d) OA is eligible to be a debtor under section 109(a) of the Bankruptcy Code;

(e) the Petitioners are duly authorized to serve as foreign representatives and to petition for relief under Chapter 15 of the Bankruptcy Code in connection with the proceeding respecting OA pending in Australia; and

(f) the Petitioners are entitled to the relief requested.

2. By the Petition, the Petitioners seek recognition of OA's liquidation proceeding (the "<u>Australian Proceeding</u>"), commenced by way of a resolution of the creditors of OA in accordance with section 445D under section 459A of the Australian Corporations Act 2001 (Cth) (the "<u>Corporations Act</u>"), following the termination of a deed of company arrangement, which had been executed following a resolution of OA's creditors under section 444A of the Corporations Act, by the Supreme Court of Queensland, Australia (the "<u>Australian Court</u>"). On September 9, 2009, pursuant to order of the Australian Court, a copy of which is attached hereto as Exhibit "A," Ms. Barnet and Mr. Fletcher were appointed as liquidators of OA. In that role, the Petitioners are responsible for, *inter alia*, (i) managing OA, (ii) investigating potentially valuable causes of action that OA may possess, (iii) prosecuting, settling or otherwise resolving such causes of action and (iv) making distributions to creditors. The Petitioners, by virtue of

---

[1] Following the appointment of the Petitioners, this office was closed. It was, however, the last principal place of business used by OA.

2

their appointment by the Australian Court, are subject to the supervision and oversight of the Australian Court with respect to the performance of their duties.

3. In furtherance of their duties, the Petitioners seek an order granting recognition to the Australian Proceeding substantially in the form of the proposed Order Granting Recognition of a Foreign Main Proceeding attached hereto as Exhibit "B" (the "<u>Proposed Order</u>").  In particular, the Petitioners are requesting all relief afforded automatically upon recognition to a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code.

4. The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.  In addition, OA is eligible to be a debtor under section 109(a) of the Bankruptcy Code, because it has property in the United States, consisting of money held in a bank account in the United States as an undrawn retainer and claims and causes of action against entities in the United States.

5. Based on the foregoing and the reasons described herein, the Petitioners are entitled to an order granting recognition to the Australian Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, Loretta C.J.), dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

7. Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

# BACKGROUND

**II.  OA and the Octaviar Group**

    A.  <u>OA</u>

8.  OA is a company incorporated in the state of Queensland, Australia. OA is part of a larger group of companies known as the "Octaviar Group." OA has a share capital of one fully paid ordinary share, which is held by Octaviar Treasury Pty Ltd (in liquidation) ("<u>Octaviar Treasury</u>"). Ms. Barnet and Mr. Fletcher were appointed as the liquidators of Octaviar Treasury on October 26, 2009. Octaviar Treasury is also a company incorporated in the state of Queensland, Australia.

9.  OA's primary function was to operate the Octaviar Group's bank accounts, employ staff for the Octaviar Group and act as the Octaviar Group's treasury. In addition, OA provided services, pursuant to a service agreement dated January 5, 2005, to its ultimate holding company Octaviar Limited (receivers and managers appointed) (in liquidation) ("<u>OL</u>"). Under the terms of the service agreement, OA agreed to provide OL with, among other things, the following:

    (a)  accounting, clerical and company secretarial services;

    (b)  receiving and recovery of accounts receivable;

    (c)  payment and deposit facilities; and

    (d)  general business resources.

    B.  <u>OL</u>

10.  OL is a publicly listed company incorporated in the state of Queensland, Australia. OL is also the ultimate holding company of various other companies that form the Octaviar Group. Ms. Barnet and Mr. Fletcher were appointed as the liquidators of OL on September 9, 2009.

11. OL's primary function as the ultimate holding company of the Octaviar Group was to manage the affairs of all companies within the Octaviar Group. This included making decisions at a board level on behalf of the companies within the Octaviar Group.

C. The Octaviar Group

12. Prior to its demise, the Octaviar Group consisted of four business units, namely a travel and tourism business, a corporate and investment banking business, a funds management business, and a structured finance and advisory business. At its height, the Octaviar Group consisted of over 400 companies, employed over 3000 employees, and had offices in Australia, New Zealand and the United Arab Emirates.

   i. *Business of the Octaviar Group*

   (a) Travel and Tourism

13. The Octaviar Group operated its travel and tourism business through a collection of subsidiaries, collectively known as the "Stella Group." The Stella Group was divided into two primary divisions: (i) Stella Hospitality Group and (ii) Stella Travel Services. Stella Hospitality Group owned and operated a portfolio of accommodation facilities in Australia and New Zealand under various brands and held shares in (i) the Protea Group, a South African based hotel business that had a portfolio of 126 hotels and retreats across 13 countries in Africa and Europe and (ii) Golden Tulip Group, a European-based hotel group that franchised and managed 214 hotels with more than 25,000 rooms across 45 countries. Stella Travel Services comprised retail and wholesale tourism businesses such as retail travel agencies, online travel booking and information platforms, call centers and wholesale holiday packaging.

   (b) Corporate and Investment Banking

14. The primary business of the Corporate and Investment Banking division ("CIB Division") was the acquisition of strategic assets or businesses and the extraction of value from

5

them through their development and integration with the Octaviar Group's existing assets and businesses. The CIB Division also provided services to other business divisions in the Octaviar Group with regard to debt and capital raising and asset acquisition.

    (c)    Funds Management

15. The business of the Funds Management division ("<u>FM Division</u>") included originating, developing and managing a range of specialty funds for predominantly Australian and New Zealand retail, wholesale and institutional investors. The FM Division focused on the creation, management and development of investment trusts and other vehicles for investors. The FM Division generated three sources of revenue: management fees, performance fees and transaction/acquisition fees. The FM Division included six companies which operated as licensed "Responsible Entities" for managed investment schemes under the Corporations Act.

    (d)    Structured Finance and Advisory

16. The Structured Finance and Advisory division ("<u>SFA Division</u>") provided lending and structured finance advisory services throughout eastern Australia, primarily in the property sector. The revenue generated by the SFA Division included transactional fees, structuring fees, success fees and profit sharing arrangements.

**III.**    **The Australian Proceeding and Related Events**

    A.    <u>Collapse of the Octaviar Group</u>

17. The collapse of the Octaviar Group commenced on January 18, 2008, following an announcement by the Octaviar Group of its intention to separate its financial services businesses from its travel and tourism business (i.e., the Stella Group). Immediately following the announcement, OL's share price on the Australian Securities Exchange declined from an opening price of AUD $3.18 to a closing price of AUD $0.99. The fall in share price triggered an event of default ("<u>Event of Default</u>") under a AUD $150,000,000 bridging finance facility

6

(the "Facility") provided by Fortress Credit Corporation (Australia) II Pty Limited ("Fortress"), which was secured by a fixed and floating lien granted by OL for the benefit of Fortress. On January 21, 2008, OL's shares were placed in a trading halt and were subsequently suspended from trading, a suspension which was never lifted.

18.     On January 21, 2008, in order to enable the Octaviar Group to raise sufficient funds to repay the Facility, Fortress agreed to waive the Event of Default until February 4, 2008. Ultimately, Fortress agreed to extend the term of the Facility until the earlier of March 30, 2008 or the sale of the Stella Group.

19.     On February 3, 2008, the Octaviar Group reached an agreement with Global Voyager Pty Limited ("Global") whereby Octaviar Group sold 65% of the Stella Group to Global for the sum of AUD $400,000,000, plus Global's assumption of approximately AUD $900,000,000 of debt owed by the Stella Group. This sale price was based on an estimated enterprise value of AUD $1,500,000,000 for the Stella Group. This sale price was approximately AUD $1,200,000,000 less than the value previously ascribed to the Stella Group in the Octaviar Group's financial statements for the year ended June 30, 2007. The sale to Global was completed on February 29, 2008 and, that same day, the proceeds of this sale were used to repay Fortress all outstanding indebtedness under the Facility.

20.     The collapse in OL's share price and the Octaviar Group's desire to raise funds as quickly as possible led to creditors demanding early payment and a reduction of credit. Between March and June of 2008, the Octaviar Group attempted to reach a standstill arrangement with its major creditors, without success.

21.     On June 4, 2008, the Public Trustee of Queensland, in its capacity as the trustee of certain note and bond issuances by Octaviar Investment Notes Limited ("OIN") and Octaviar

7

14-10438-scc    Doc 2    Filed 02/27/14    Entered 02/27/14 22:52:14    Main Document
Pg 8 of 19

Bonds Limited ("OIB"), each an Octaviar Group subsidiary, filed an application in the Australian Court seeking orders to wind up OL, OIN, OIB and another subsidiary, Octaviar Financial Services Pty Limited.

22. Following the filing of the winding-up application, OL, by its directors, elected to go into voluntary administration on September 13, 2008. On October 3, 2008, the directors of OA resolved to place OA into external administration.

B. Overview of Australian Insolvency Proceedings

23. As set forth in greater detail in the Atkins Declaration, Australian law has evolved from English law and is very similar to English common law and rules of equity. In Australia, the formation, operation and dissolution of companies is primarily regulated by the Corporations Act. In general, the Corporations Act applies to companies that are either registered or registrable. Companies formed in Australia are registered on incorporation. The Corporations Act provides for five principal formal insolvency procedures, including, *inter alia*, liquidation. See Atkins Declaration ¶¶ 7-10.

24. Liquidation (i.e., "winding-up") is the process of collecting and realizing the assets of a company, discharging its debts and liabilities and distributing the balance, if any, among the stakeholders according to their entitlements or as the constitution of the company directs. Liquidation may be voluntary or imposed by court order. See Atkins Declaration ¶ 10. A voluntary winding-up differs from a compulsory winding-up in that it is initiated by (i) a company's members rather than the court, or (ii) a resolution of creditors at the conclusion of a voluntary administration process. See Atkins Declaration ¶ 15.

25. Upon the application of a party for an order to wind up a company, section 459A of the Corporations Act provides that the Australian courts may order an insolvent company to be wound up. The court order does not itself wind up the company; it directs that the process of

8

liquidating the company's assets and winding up of its affairs should begin and appoints a liquidator to oversee the process. See Atkins Declaration ¶ 13. Upon appointment, a liquidator will assume control of the company and its property. The directors of the company do not lose their offices, but they can act only with the written approval of the liquidator or approval of the court. However, the liquidator does not automatically gain all of the powers lost by the directors but instead is limited to those powers provided by the Corporations Act. A liquidator's functions generally include: (a) ascertaining the liabilities of the company; (b) converting the company's assets into money; (c) terminating the company's contracts; (d) disposing of the company's business; (e) examining the circumstances which precipitated the liquidation and which may reveal improper dispositions of property and criminal offenses; (f) prosecuting claims or causes of action seeking the recovery or monetization of assets; (g) otherwise winding up the affairs of the company; (h) equitably distributing the company's assets among its creditors; and (i) extinguishing the company as a legal entity by formal dissolution (i.e., deregistration). See Atkins Declaration ¶¶ 17-18.

26.    The Australian courts have general supervisory jurisdiction and substantial judicial oversight over a voluntary winding-up that can be invoked by interested persons, including creditors, the Australian Securities and Investments Commission, and any "person aggrieved by any act, omission or decision of the liquidator." See Atkins Declaration ¶ 18. In particular, the following provisions of the Corporations Act, inter alia, enable the Australian courts to exercise general supervisory jurisdiction over the liquidation and the conduct of the liquidator: (a) section 503, which permits the court to replace a liquidator; (b) section 511, which provides that a liquidator can seek an order or other determination from the court regarding any question arising in the winding-up of a company; (c) section 526, which permits the court to

require a liquidator to answer any inquiry concerning the liquidation, examine the liquidator concerning the liquidation or investigate the books of the liquidator; and (d) section 1231, which allows a "person aggrieved by any act, omission, or decision of . . . a liquidator" to appeal to the Australian Court for a determination on whether to confirm, reverse or modify the act or decision or remedy the omission and for the court to issue a related order, if necessary.  See Atkins Declaration ¶ 19.

    C.    The Winding-Up of OA

        i.    *Administration*

27.    On October 3, 2008, the directors of OA resolved to place OA into voluntary administration and to appoint John Lethbridge Greig and Nicholas Harwood of Deloitte Touche Tohmatsu as voluntary administrators.

28.    On January 12, 2009, Messrs. Greig and Harwood were appointed as deed administrators pursuant to a Deed of Company Arrangement ("OA Deed").

        ii.    *Liquidation*

29.    On July 31, 2009, the Australian Court ordered that the OA Deed be terminated. Pursuant to section 446B of the Corporations Act and regulation 5.3A.07 of the Corporations Regulations, OA was deemed to have passed a special resolution that OA be voluntarily wound up.  The Australian Court appointed Messrs. Greig and Harwood as the liquidators of OA.

30.    On September 9, 2009, the Australian Court removed Messrs. Greig and Harwood and appointed Ms. Barnet and Mr. Fletcher as the liquidators of OA.

31.    In their capacity as liquidators of OA, Ms. Barnet and Mr. Fletcher have commenced a number of proceedings to recover assets for OA's creditors.  Additionally, the liquidators have also undertaken the following activities:

(a) obtained the books and records of the Octaviar Group to enable review and further investigation where necessary, including over 7,500 boxes of hard copy materials and 1.1 terabytes of electronic materials;

(b) conducted extensive public examinations of directors, officers and professional advisers to OA, in particular to ascertain any potential causes of action and identify any reportable statutory breaches by officers of OA;

(c) called for formal proofs of debt in the winding-up of OA and are currently in the process of undertaking formal adjudication of the proofs of debt which have been submitted; and

(d) undertaken payment of an interim distribution to those creditors whose proofs of debt have been adjudicated and consequently admitted.

32. Following the completion of their investigations and the conclusion of the proceedings commenced to date, the Petitioners intend to make a final distribution to creditors and ultimately deregister OA.

IV. **External Administration of Other Octaviar Group Companies**

33. As well as being the liquidators of OA and OL, Ms. Barnet and Mr. Fletcher are also the liquidators of the following companies within the Octaviar Group:

| Company | Date of Appointment |
| --- | --- |
| Octaviar Castle Pty Ltd (In Liquidation) | November 9, 2009 |
| Octaviar Investment Holdings No.2 Pty Ltd (In Liquidation) | October 12, 2009 |
| Octaviar Investment Holdings No.1 Pty Ltd (In Liquidation) | October 27, 2009 |
| Octaviar Treasury Pty Ltd (In Liquidation) | October 27, 2009 |
| Octaviar Property Pty Ltd (In Liquidation) | October 27, 2009 |
| MFSL Holding Pty Ltd (In Liquidation) | October 27, 2009 |
| McLaughlins Financial Services Limited (In Liquidation) | November 23, 2009 |
| MFS Alternative Asset Limited (In Liquidation) | October 22, 2010 |
| Specialty Finance Pty Ltd (In Liquidation) | October 22, 2009 |
| Octaviar Environmental Infrastructure Pty Ltd (In Liquidation) | October 22, 2009 |
| Octaviar Investments Nominees Pty Ltd (In Liquidation) | October 22, 2009 |
| Octaviar Aqua Managers Limited (In Liquidation) | November 23, 2009 |

34. On February 4, 2011, Mr. Fletcher was appointed as liquidator to an associated entity, Young Village Estates Pty Limited.

35. The following is a list of the other Octaviar Group companies that are in liquidation and the liquidators appointed therein:

| Company | Liquidator |
|---|---|
| Octaviar Investment Bonds Limited (In Liquidation) | William Colwell, Gregory Moloney and Peter Gothard |
| Octaviar Investment Notes Limited (In Liquidation) | William Colwell, Gregory Moloney and Peter Gothard |
| Octaviar Financial Services Pty Ltd (In Liquidation) | Nicholas Harwood and John Grieg |
| OPI Investment Finance Pty Ltd (in liquidation) | Ann Fordyce |
| Bale Homes Queensland Pty Ltd (In Liquidation) | Glen Miller and Ian Jessup |

36. Receivers and managers have also been appointed to numerous entities within the Octaviar Group.

## V. The Initial Chapter 15 Case

37. On August 13, 2012, the Petitioners commenced a case under Chapter 15 of the Bankruptcy Code (the "Initial Chapter 15 Case") by filing a petition with this Court seeking recognition of the Australian Proceeding as a foreign main proceeding. The Initial Chapter 15 Case was assigned to Judge Shelley C. Chapman and bears Case No. 12-13443 (SCC).

38. Drawbridge Special Opportunities Fund LP ("Drawbridge"), an indirect owner of Fortress and certain affiliates of Fortress, objected to recognition on the basis that OA did not satisfy the requirements of section 109(a) of the Bankruptcy Code. Holding that section 109(a) of the Bankruptcy Code does not apply to a foreign debtor in a Chapter 15 case, this Court issued an order (the "Recognition Order") granting recognition to the Australian Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code after concluding that the Petitioners had satisfied all of the requirements for recognition under Chapter 15.

12

39. On September 20, 2012, Drawbridge filed a notice of appeal of the Recognition Order.

40. This Court certified Drawbridge's appeal of the Recognition Order for direct consideration by the Second Circuit and issued a memorandum in support of that certification. Thereafter, on December 21, 2012, the Petitioners and Drawbridge filed a Joint Petition for Permission for Direct Appeal with the Second Circuit.

41. After this Court denied a motion for stay pending appeal, Drawbridge filed a similar motion for a stay of the Recognition Order with the Second Circuit. On February 21, 2013, the Second Circuit entered an order (a) granting the joint petition for direct appeal to the Second Circuit and (b) staying proceedings before this Court pending resolution of the appeal.

42. The principal question on appeal was whether section 109(a) applies to a foreign debtor in a Chapter 15 case. On December 11, 2013, the Second Circuit concluded that section 109(a) applies to a debtor in a foreign main proceeding under Chapter 15. Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet), 737 F.3d 238 (2d Cir. 2013). Finding that the Petitioners made no attempt to demonstrate that OA had a domicile, place of business or property in the United States, the Second Circuit vacated the Recognition Order and remanded the case to this Court.[2]

43. The Initial Chapter 15 Case remains pending before this Court. The Petitioners will promptly request the dismissal of the Initial Chapter 15 case should this Court enter an order granting recognition to the Australian Proceeding as a foreign main proceeding under Chapter 15.

---

[2] The Second Circuit's finding that the Petitioners made no attempt was erroneous, as the Petitioners alleged that OA held property in the United States in their initial chapter 15 papers and in their brief to the Second Circuit itself.

**VI.** **OA's Property in the United States**

44. As of the date hereof, OA has an interest in an undrawn retainer with Chadbourne & Parke LLP, the Foreign Representative's United States counsel. Pursuant to the terms of a letter dated January 24, 2014, a copy of which is attached as Exhibit "C," the Petitioners deposited $10,000 in a non-interest bearing client trust account with JPMorgan Private Bank in New York (the "Client Trust Account"). Such funds remain in the Client Trust Account as of the date hereof and are OA's property. Pursuant to the Petitioners' arrangements with their counsel, Chadbourne & Parke LLP is only permitted to apply the funds in the Client Trust Account to outstanding invoiced amounts at the Petitioners' direction.

45. In addition, OA has assets in the United States in the form of claims and causes of action against entities located in the United States. The Petitioners intend to pursue these potential claims and causes of action in the immediate future. Indeed, they are in the process of finalizing and filing certain complaints. It is anticipated that this litigation will be commenced shortly – well in advance of the date of the hearing on this request for recognition -- and copies of the filed complaints will be supplied to this Court. The Petitioners filed this Chapter 15 petition to, among other things, facilitate the pursuit of such claims.

**STATUTORY BASIS FOR RELIEF REQUESTED**

46. Chapter 15 of the Bankruptcy Code was specifically designed to assist foreign representatives, such as the Petitioners, in the performance of their duties. One of the primary objectives of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

47. The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code. In addition, OA is eligible to be a debtor under section 109(a) of the

14

Bankruptcy Code, because it has property in the United States. Moreover, the relief requested herein is necessary and is appropriate under Chapter 15 of the Bankruptcy Code. Granting recognition to the Australian Proceeding is consistent with the goals of international cooperation and assistance to foreign courts that are embodied in Chapter 15 of the Bankruptcy Code.

48. The criteria for recognition under Chapter 15 are satisfied under the facts of this case. Relief under Chapter 15 of the Bankruptcy Code is necessary to ensure that OA is liquidated in an orderly manner, that any potential claims or causes of action are fully investigated and prosecuted, and that any proceeds resulting from United States litigation are protected for the benefit of all creditors and distributed under the auspices of the Australian Court in the Australian Proceeding.

## RELIEF REQUESTED

49. The Petitioners, as the foreign representatives of OA, seek entry of the Proposed Order granting the following relief:

   (a)  recognition of the Australian Proceeding as a foreign main proceeding, as defined in section 1502(4) of the Bankruptcy Code;

   (b)  all relief afforded a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code; and

   (c)  such other and further relief as this Court may deem just and proper.

50. The Petitioners believe that the Australian Proceeding, with the assistance of this Court, offers the best means to liquidate OA's assets and achieve a global, equitable resolution of OA's liabilities. Recognition of the Australian Proceeding as a foreign main proceeding under Chapter 15 is critical to achieving this goal for several reasons. First, Chapter 15 relief will enjoin any actions against OA or its assets in the United States. If such actions are not stayed, the orderly liquidation of OA may be jeopardized and the Petitioners may be forced to expend resources unnecessarily to defend actions brought in the United States. Second, pursuant to

15

section 1509(b) of the Bankruptcy Code, Chapter 15 recognition of the Australian Proceeding would guaranty the Petitioners access to United States courts to pursue causes of action against entities in the United States. Finally, Chapter 15 relief will protect any proceeds recovered by the Petitioners in litigation brought in the United States and ensure that such proceeds are distributed in accordance with the Australian Proceeding. Based on the foregoing, the Petitioners concluded that relief under Chapter 15 is appropriate and necessary to achieve the goals of the Australian Proceeding and therefore commenced this case.

## NOTICE

51. Pursuant to section 1517(c) of the Bankruptcy Code, a petition for recognition shall be decided at the "earliest possible time." Accordingly, the Petitioners request that this Court set the date for the hearing on recognition and to consider the Proposed Order (the "Hearing") on April 10, 2014. In addition, the Petitioners request that this Court approve the manner of service set forth in the application for order limiting notice, scheduling hearing and specifying the form and manner of service of notice filed contemporaneously herewith (the "Application").

52. Following a diligent search, as of the date hereof, the Petitions are unaware of (i) any creditors of the Company that have addresses in the United States or (ii) any parties to litigation that is pending in the United States involving the Company. In addition, in connection with the Initial Chapter 15 Case, the Petitioners provided constructive notice to all creditors and parties in interest in the United States by publishing a notice setting forth key information and deadlines in The Wall Street Journal (national edition). Other than Drawbridge and certain individuals associated with Drawbridge, no other party appeared in the Initial Chapter 15 Case. Accordingly, in order to conserve limited resources, the Petitioners will cause a copy of the Notice of Filing and Hearing on Petition Under Chapter 15 of the Bankruptcy Code (the

16

"Notice") to be (i) served upon (a) OA, (b) the Petitioners, as the duly authorized foreign representatives in the Australian Proceeding, (c) Drawbridge and (d) the United States Trustee.[3]

53. By such notice, all interested parties will be advised of the commencement of the Chapter 15 case, the relief requested by the Verified Petition, the central documents filed with the Court respecting the Chapter 15 case, as well as the date, place and time of the hearing to consider the Verified Petition and the date, time and manner for lodging a response or motion respecting the Verified Petition and the relief requested therein, in accordance with the Bankruptcy Rules and the Local Rules of Bankruptcy Procedure.

---

[3] Copies of all other pleadings will be provided upon request to the Petitioners' counsel. These pleadings include: (i) the Petition; (ii) the Atkins Declaration; (iii) the Statement of Foreign Representative required pursuant to 11 U.S.C. § 1515; (iv) the Corporate Ownership Statement required by Bankruptcy Rule 7007.1; and (v) the Memorandum of Law in Support of the Verified Petition.

## **CONCLUSION**

WHEREFORE, the Petitioners respectfully request that this Court grant the relief requested and such other and further relief as may be just and proper.

Dated: New York, New York
February 27, 2014

                    CHADBOURNE & PARKE LLP

                    By: /s/ Howard Seife
                         Howard Seife
                         A Member of the Firm
                         Attorneys for the Petitioners
                         30 Rockefeller Plaza
                         New York, New York 10112
                         (212) 408-5100

**CHADBOURNE & PARKE LLP**
Counsel for the Petitioners
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100
Howard Seife
Andrew Rosenblatt
Francisco Vazquez
Eric Daucher

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re                                                                          :
                                                                                    :
OCTAVIAR ADMINISTRATION PTY LTD,           :    In a Case Under Chapter 15
                                                                                    :    of the Bankruptcy Code
                                                                                    :
Debtor in a Foreign Proceeding.                          :    Case No. 14-
---------------------------------------------------------------- x

       I, Katherine Elizabeth Barnet, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

       I am one of the liquidators of Octaviar Administration Pty Ltd (in liquidation). I have the full authority to verify this petition on behalf of the liquidators.

       I have read the foregoing petition, and I am informed and believe that the factual allegations contained therein are true and accurate.

       I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information and belief, the foregoing is true and correct.

       Executed this 28th day of February 2014 in Sydney, Australia

       /s/ Katherine Elizabeth Barnet
       Katherine Elizabeth Barnet, a joint and several liquidator of Octaviar Administration Pty Ltd