**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re                                                            :
                                                                 :
OCTAVIAR ADMINISTRATION PTY LTD,                                 :   In a Case Under Chapter 15
                                                                 :   of the Bankruptcy Code
                                                                 :
Debtor in a Foreign Proceeding.                                  :   Case No. 14-10438
---------------------------------------------------------------- x

**DECLARATION OF SCOTT ANDREW ATKINS IN SUPPORT OF LIQUIDATORS' VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING**

Scott Andrew Atkins, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

1. I am a partner with the law firm of Henry Davis York, counsel for Katherine Elizabeth Barnet and William John Fletcher of Bentleys Corporate Recovery Pty Limited who, on September 9, 2009, were appointed as joint and several liquidators ("Liquidators") of Octaviar Administration Pty Limited ("OA"). I am duly authorized to make this declaration on behalf of the Liquidators.

2. I submit this declaration in support of the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding.*

3. This declaration is comprised of matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements represent my view of Australian law as a practicing lawyer.

4. Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents

and/or information supplied to me by or on behalf of the Liquidators and are true to the best of my knowledge, information and belief.

**Professional Background**

5.   I am a legal practitioner practicing in New South Wales, Australia. I was admitted as a solicitor of the Supreme Court of the State of New South Wales on December 14, 1994. I am also admitted as a legal practitioner of the High Court of Australia, which admission entitles me to appear in the Federal Court and the High Court of Australia. I specialize in corporate restructuring and insolvency and have practiced and specialized in this field since 1994. I am a Fellow of INSOL International.

**Background**

6.   Prior to its demise, the Octaviar Group, of which OA was part, consisted of four business units, namely a managed funds business, a corporate and investment banking business, a structured finance and advisory business and a travel and tourism business. At its height, the Octaviar Group consisted of over 400 companies, employed over 3000 employees, and had offices in Australia, New Zealand and the United Arab Emirates.

**Current Forms of Corporate Insolvency Under Australian Law**

7.   Australian law has evolved from English law, and is very similar to English common law and rules of equity. In Australia, the formation, operation and dissolution of companies are primarily regulated by the Australian Corporations Act 2001 (the "Corporations Act") and its related regulations (the "Corporations Regulations"). In general, the Corporations Act applies to companies that are either registered or registrable. Companies formed in Australia, such as OA, are registered on incorporation.

2

8. The Corporations Act provides for the following five principal formal procedures to address the insolvency of a company or the restructuring of the business affairs of a company if approaching insolvency:

(a) voluntary administration;
(b) deed of company arrangement;
(c) liquidation;
(d) receivership; and
(e) scheme of arrangement

9. Since July 31, 2008, OA has been in liquidation. The following paragraphs provide further information regarding the process and the procedures that apply when a company is placed into liquidation under Australian law.

**Liquidation**

10. Liquidation (i.e., a "winding-up") is the process of collecting and realizing the assets of a company, discharging its debts and liabilities and distributing the balance, if any, among the stakeholders according to their entitlements or as the constitution of the company directs. The aim of a winding-up is to ensure an orderly and ratable distribution of the property (if any) of a company to the company's creditors. The liquidator ascertains the liabilities of the company, converts its assets into money, terminates its contracts, disposes of its business, distributes the net assets to creditors and any surplus to the shareholders, and extinguishes the company as a legal entity by formal dissolution (i.e., deregistration). Liquidation may be voluntary or imposed by Court[1] order.

11. A winding-up is classified according to the way it is commenced. A winding-up by the Court (i.e., a "compulsory winding-up") is generally commenced in the Federal Court of

---

[1] As defined in the Corporations Act.

Australia or in a Supreme Court of an Australian state or territory. A voluntary winding-up may be either (i) a "member's voluntary winding-up," following a resolution being passed by the shareholders of the company or (ii) a "creditor's voluntary winding-up," where a resolution to wind the company up is passed by the creditors of the company.

12. The main effects of a company going into a compulsory or creditors' voluntary winding-up are as follows:

   (a) the directors may not perform or exercise their functions or powers except in specific circumstances;
   (b) the company is to cease carrying on its business except so far as is, in the opinion of the liquidator, required for the beneficial winding-up of the company;
   (c) no court proceedings against the company may be commenced or continued, nor may enforcement process be validly taken against its property (except, in the case of a compulsory winding-up, with leave of the Court);
   (d) the liquidator takes custody of all property of the company;
   (e) transfers of shares after the commencement of the winding-up are affected by provisions of the Corporations Act; and
   (f) every invoice, order for goods or business letter must bear the words 'in liquidation' after the company's name.

**Compulsory Winding-Up**

13. Under section 459A of the Corporations Act, a Court may, on application, make an order that an insolvent company be wound up. The Court order does not itself wind up the company; it directs that the process of liquidating the company's assets and winding up of its affairs should begin.

14. Pursuant to section 459P of the Corporations Act, a winding-up order may be sought by the company, a creditor, contributories, a director, a liquidator, the Australian Securities and Investments Commission ("ASIC"), and certain government agencies

("Applicant"). However, contingent or prospective creditors, contributories, directors and ASIC can only apply to wind up a company in insolvency with the Court's leave.

15. In a compulsory winding-up, the liquidator is appointed by the Court. The Applicant will usually nominate a proposed liquidator but the ultimate decision lies with the Court. In order to be nominated, the proposed liquidator must be a "registered liquidator" in accordance with the requirements of the Corporations Act and must also have been designated by ASIC to be an "official liquidator." An "official liquidator" is an officer of the Court and therefore can be made subject to the control and direction of the Court.

**Voluntary Winding-Up**

16. A voluntary winding-up differs from a compulsory winding-up in that it is initiated by (i) a company's members rather than the Court or (ii) a resolution of creditors at the conclusion of a voluntary administration process.

17. Where a deed of company arrangement is terminated by order of the Court, such as in the present case, pursuant to the operation of section 446B of the Corporations Act and regulation 5.3A.07 of the Corporations Regulations, the company is deemed to have passed a special resolution under section 491 to wind the company up voluntarily.

18. In a voluntary winding-up, the shareholders or directors will nominate a proposed liquidator, who must be a registered liquidator. However, where the winding-up is a creditors' voluntary winding-up, the creditors of the company may appoint a different liquidator at the first meeting of creditors (sections 496, 497 and 499 of the Corporations Act). Following the termination of a voluntary administration or a deed of company arrangement and commencement of a creditors' voluntary winding-up, the administrator will become the liquidator unless otherwise removed by the Court.

5

19. A voluntary winding-up is not a winding-up by the Court. That having been said, there are numerous provisions in the Corporations Act that confer jurisdiction on both the Federal Court of Australia and the Supreme Court of each of the states and territories of Australia to, in effect, exercise general supervisory jurisdiction in relation to the voluntary winding-up. There is substantial judicial oversight which can be invoked by interested persons, including a creditor, the ASIC and, indeed, any "person aggrieved by any act, omission or decision of the liquidator." In this regard, I would note the following provisions of the Corporations Act that enable the relevant Australian Court to exercise general supervisory jurisdiction in relation to the liquidation in general, and the conduct of the liquidator in particular:

*Section 1231*
1231(1). A person aggrieved by any act, omission, or decision of:
(d)  a liquidator or provisional liquidator of a company;
    may appeal to the Court in respect of the act, omission or decision and the Court may confirm, reverse or modify the act or decision, or remedy the omission, as the case may be, and make such orders and give such decisions as it thinks fit.

*Section 503*
503. The Court may, on cause show, remove a liquidator and appoint another liquidator.

*Section 511(1)*
511(1). The liquidator or any contributory or creditor, may apply to the Court:
(a)  to determine any question arising in the winding-up of a company; or
(b)  to exercise all or any of the powers that the Court might exercise if the company were being wound up by the Court.

*Section 511(2)*
511(2). The Court, if satisfied that the determination of the question or exercise of power will be just and beneficial, may accede wholly or partially to any such application on such terms and conditions as it thinks fit or may make such other order on the application as it thinks just.

*Section 536*

6

(1) Where;
(a)   it appears to the Court or to ASIC that a liquidator has not faithfully performed or is not faithfully performing his or her duties or has not observed or is not observing:
   (i)   a requirement of the Court; or
   (ii)  a requirement of this Act, of the regulations or the rules; or
(b)   a complaint is made to the Court or to ASIC by any person with respect to the conduct of a liquidator in connection with the performance of his or her duties; the Court or ASIC, as the case may be, may enquire into the matter and, where the Court or ASIC so enquires, the Court may take such action as it thinks fit.
…
(3) The Court may at any time require a liquidator to answer any enquiry in relation to the winding-up and may examine the liquidator or any other person on oath concerning the winding-up and may direct an investigation to be made of the books of the liquidator.

**Provisions Applicable Generally to Liquidations**
**(Both Voluntary and Compulsory Windings-Up)**

20.   Upon appointment, a liquidator will assume control of the company and its property. While a company's directors are not removed from office, they can act only with the written approval of the liquidator or the approval of the Court. However, the liquidator does not automatically gain all of the powers of the directors. A liquidator's functions include (a) winding-up the affairs of the company; (b) distributing equitably the company's assets among its creditors; and (c) examining the circumstances which precipitated the liquidation and which may reveal improper dispositions of property and criminal offences.

21.   In order to fulfil his or her duties to creditors, a liquidator will often undertake investigations to (a) locate and recover assets; (b) explain to interested parties the circumstances leading to the company's liquidation; (c) identify transactions or offences as a basis for the recovery of assets for creditors; and (d) assist in the examination and/or prosecution of persons connected with the company.

22. In *Re Allebart Pty Ltd* (1971) 1 NSWLR 24, his Honor Justice Street, described a liquidator's investigative function as follows:

> *The Official Liquidator is an officer of the Court, and as such he has public responsibilities to investigate past activities connected with the company, and, in appropriate cases, to initiate such further proceedings, civil or criminal connected therewith as the circumstances may dictate. It is his duty to discover not only breaches of the Companies Act but also conduct falling short of the requisite standards of commercial morality. In every instance the winding-up of an insolvent company pursuant to an order of the Court is attended with these obligations resting on the Official Liquidator. The due course of such a winding-up involves his taking such steps in relation thereto as are necessary to discharge the duties and obligations resting upon him.*

23. In addition to conducting investigations, the Corporations Act permits a liquidator to commence proceedings in certain circumstances to recover funds that have been paid to creditors in the period leading to the winding-up. A liquidator is permitted to commence such proceedings where (i) a transaction has been entered into by a company which subsequently becomes insolvent during the "relation back period" and, (ii) within the meaning of the Corporations Act, the transaction is (a) an "uncommercial transaction" (section 588FB), (b) an "unfair preference" (section 588FA), (c) a transaction undertaken for the purpose of defeating creditors (section 588FE), or (d) an unfair loan to the insolvent company (section 588FC).

24. After collecting the assets and after the time fixed for the adjudication of claims, a liquidator can make distributions to creditors. With respect to an insolvent company, there is a prescribed order of payment of debts. In general, and subject to the exceptions outlined below (including receivership and the existence of a secured creditor), all debts proved in a winding-up rank equally and, if the property of the company is insufficient to meet them in full, they are to be paid rateably.

25. A statutory order of priorities is set forth in section 556 of the Corporations Act, and is summarised as follows:

    (a)    expenses (except for remuneration and fees) properly incurred by the liquidator or any voluntary administrator or deed administrator in preserving, realising or getting in property of the company, or in carrying on the company's business;

    (b)    if the Court ordered the winding-up, the costs in respect of the application for the order, certain prescribed debts incurred by an administrator of the company;

    (c)    certain other expenses incurred in the insolvent administration of the company;

    (d)    remuneration and fees of the liquidator and of any voluntary administrator or deed administrator;

    (e)    wages and superannuation payments to employees;

    (f)    amounts due in respect of injury compensation;

    (g)    amounts due in respect of leave entitlements; and

    (h)    retrenchment payments.

26. If there is not enough property of a company to meet all the priority debts and a category of priority debts cannot be paid in full, debts in that category are to be paid proportionately.

27. If all priority debts have been paid, the liquidator may then pay the remaining unsecured debts which have been proved. Subject to the certain exceptions, if there is a deficiency of property, the debts are to be paid proportionately.

28. Any surplus remaining after payment of all debts will normally be distributed among the equity holders.

**Application to the Circumstances of OA**

    (a)    <u>Administration</u>

29. On October 3, 2008, the directors of OA resolved to place OA into voluntary administration and to appoint John Lethbridge Greig and Nicholas Harwood of Deloitte Touche Tohmatsu as voluntary administrators.

30. On January 12, 2009, Messrs. Greig and Harwood were appointed as deed administrators pursuant to a Deed of Company Arrangement ("OA Deed").

(b) Liquidation

31. On July 31, 2009, his Honor Justice McMurdo in the Supreme Court of Queensland, Australia, ordered that the OA Deed be terminated. Pursuant to the operation of section 446B of the Corporations Act and regulation 5.3A.07 of the Corporations Regulations, OA was deemed to have passed a special resolution that OA be voluntarily wound up. Messrs. Greig and Harwood, the former voluntary and later deed administrators, were appointed as the Liquidators of OA.

32. On September 9, 2009 Messrs. Greig and Harwood were removed as Liquidators pursuant to orders made by his Honor Justice McMurdo, and Ms. Barnet and Mr. Fletcher were appointed as liquidators of OA.

33. The Liquidators have informed me that OA has property in the United States, consisting of money held in a bank account in the United States as an undrawn retainer and claims and causes of action against entities in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of February 2014.

/s/ Scott Andrew Atkins
Scott Andrew Atkins