**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------------x

In re:                                                    In a Case Under Chapter 15
                                                          of the Bankruptcy Code

OCTAVIAR ADMINISTRATION PTY LTD,                          Case No. 14-10438 (SCC)


                    Debtor in a Foreign Proceeding.

----------------------------------------------------------------------------x


**MEMORANDUM DECISION GRANTING RECOGNITION**
**OF A FOREIGN MAIN PROCEEDING UNDER CHAPTER 15**

A P P E A R A N C E S:

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
By:    Howard Seife, Esq.
       Andrew Rosenblatt, Esq.
       Francisco Vazquez, Esq.
       Eric Daucher, Esq.

*Attorneys for Foreign Representatives, Katherine Elizabeth Barnet and William John Fletcher*

BAKER & McKENZIE LLP
452 Fifth Avenue
New York, New York 10018
By:    David F. Heroy, Esq.
       Jacob M. Kaplan, Esq.

300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
By:    Erin E. Broderick, Esq.

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
By:    Lee S. Attanasio, Esq.
       John G. Hutchinson, Esq.
       Nicholas K. Lagemann, Esq.

*Attorneys for Drawbridge Special Opportunities Fund LP*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

    A.    Octaviar's Australian Proceeding ....................................................................................2

    B.    The Activities of the Foreign Representatives in Connection with the Australian
        Proceeding ........................................................................................................................3

PROCEDURAL BACKGROUND................................................................................................4

DISCUSSION ...............................................................................................................................8

A.  Octaviar Has Property in the United States as Required by Section 109(a)............................10

    i.    Octaviar Has Property in the United States in the Form of Claims and Causes of
       Action....................................................................................................................10

    ii.  Octaviar Has Property in the United States in the Form of a Retainer .............................14

B.  The Policy and Purposes of Chapter 15 Would Be Undermined if the Foreign
    Representatives Were Deprived of an Opportunity to Bring Causes of Action on Behalf of
    Octaviar for the Benefit of its Creditors ...............................................................................17

CONCLUSION................................................................................................................................19

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

This is the second time in two years that the Court has considered a petition for recognition of the foreign proceeding of Octaviar Administration Pty Ltd (in liquidation) under chapter 15 of the Bankruptcy Code and the objections thereto filed by Drawbridge Special Opportunities Fund LP. In 2012, Katherine Elizabeth Barnet and William John Fletcher, in their capacity as liquidators and as duly authorized foreign representatives as defined by section 101(a)(24) of the Bankruptcy Code, petitioned this Court for an order recognizing Octaviar's Australian liquidation proceeding as a foreign main proceeding pursuant to 11 U.S.C. § 1515, which the Court granted over the objection of Drawbridge, a defendant in litigation that the Octaviar liquidators wish to pursue in the United States. The Court certified its Recognition Order for direct appeal to the United States Court of Appeals for the Second Circuit to consider, among other things, whether a petitioner in a chapter 15 case is required to demonstrate that the foreign debtor "resides, or has a domicile, a place of business, or property in the United States" as a condition to obtaining recognition of a foreign main proceeding under sections 1515 and 1517 of the Bankruptcy Code. The Second Circuit agreed to consider the question and held that, under a plain reading of the relevant statutory provisions, a petitioner in a chapter 15 case is required to meet the eligibility requirements set forth in section 109(a) of the Bankruptcy Code.

Shortly after the Second Circuit rendered its decision, the foreign representatives of Octaviar filed a second Verified Petition Under Chapter 15 for Recognition of a Foreign Proceeding reflecting that Octaviar in fact meets the requirements of section 109(a) of the Bankruptcy Code in accordance with the Second Circuit's decision. Drawbridge again objected. Because Octaviar has property in the United States as required by section 109(a) of the

1

Bankruptcy Code and by the Second Circuit's decision in *Barnet*, the relief requested in the Second Chapter 15 Petition shall be granted.

## FACTUAL BACKGROUND

**A.    Octaviar's Australian Proceeding**

Octaviar Administration Pty Ltd (in liquidation) ("Octaviar") is a company incorporated in the state of Queensland, Australia.  Octaviar is part of a larger group of companies known as the "Octaviar Group."  Prior to its insolvency, the Octaviar Group consisted of four business units: a travel and tourism business, a corporate and investment banking business, a funds management business, and a structured finance and advisory business.  (Verified Petition Under Chapter 15 for Recognition of a Foreign Proceeding, Case No. 14-10438 (SCC) ("*Octaviar II*") [Docket No. 2] (the "Second Chapter 15 Petition") at ¶¶ 8-13.)  The Octaviar Group operated its travel and tourism businesses through a collection of subsidiaries, collectively known as the "Stella Group."  (*Id*.)  The Stella Group was divided into two primary divisions: (i) Stella Hospitality Group and (ii) Stella Travel Services.  (*Id*.)  Octaviar's primary function was to operate the Octaviar Group's bank accounts, employ staff for the Octaviar Group, and act as the Octaviar Group's treasury.  (*Id*. at ¶ 9.)  In addition, Octaviar provided services to its ultimate holding company, Octaviar Limited (receivers and managers appointed) (in liquidation) ("Octaviar Ltd.").  (*Id*.)

On January 18, 2008, the Octaviar Group announced its intention to separate its financial services businesses from the travel and tourism businesses.  (*Id*. at ¶ 17.)  Immediately following that announcement, Octaviar Ltd.'s share price on the Australian Securities Exchange declined from an opening price of AUD$3.18 to a closing price of AUD$0.99.  (*Id*.)  The decline in Octaviar Ltd.'s share price triggered an event of default under a certain AUD$150,000,000

2

finance facility (the "FCCA2 Facility") provided by Fortress Credit Corporation (Australia) II Pty Limited ("FCCA2"), an affiliate of Drawbridge Special Opportunities Fund LP ("Drawbridge").  (*Id*.)  On February 3, 2008, the Octaviar Group reached an agreement with Global Voyager Pty Limited ("Global") pursuant to which the Octaviar Group sold 65 percent of the Stella Group to Global for the sum of AUD$400,000,000, plus Global's assumption of approximately AUD$900,000,000 of debt owed by the Stella Group.  (*Id*. at ¶ 19.)  The sale to Global was completed on February 29, 2008.  That same day, the Octaviar Group used the proceeds of the sale to repay FCCA2 all outstanding indebtedness under the FCCA2 Facility.  (*Id*.)

On October 3, 2008, the directors of Octaviar placed Octaviar into voluntary administration in Australia (the "Australian Proceeding").  Pursuant to section 446B of the Australian Corporations Act 2001, Octaviar was deemed to have passed a special resolution that Octaviar voluntarily be wound up.  (*Id*. at ¶¶ 22-26.)  On September 9, 2009, the Australian Court appointed Katherine Elizabeth Barnet and William John Fletcher (together, the "Foreign Representatives") as the liquidators of Octaviar.  (*Id*. at ¶¶ 30-32.)

B.    **The Activities of the Foreign Representatives in Connection with the Australian Proceeding**

In their capacity as liquidators of Octaviar, the Foreign Representatives are responsible for managing Octaviar; investigating potentially valuable causes of action that Octaviar may possess; prosecuting, settling, or otherwise resolving such causes of action; and making distributions to creditors.  (*Id*. at ¶¶ 31-32.)  In particular, the Foreign Representatives have commenced proceedings in Australia (the "Australian Litigation") to recover assets for the benefit of Octaviar's creditors, including an action to recover approximately AUD$210,000,000 from certain affiliates of Drawbridge, including FCCA2 and its manager, Fortress Investment

Group (Australia) Pty Limited ("FIGA"), another Australian entity indirectly owned by Drawbridge, based on asserted breaches of the Australian Corporations Act and certain equitable claims available under Australian law, including unjust enrichment and assisting in a fiduciary's breach of duty.  (Foreign Representatives' Reply to Objection of Drawbridge Special Opportunities Fund LP to Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding ("Second Chapter 15 Reply") at ¶ 1.)[1]

## PROCEDURAL BACKGROUND

The Foreign Representatives commenced the prior related proceedings in *In re Octaviar Administration Pty* Ltd, Case No. 12-13443 (SCC) ("*Octaviar I*") on August 13, 2012, by filing a Verified Petition for Relief Under Chapter 15 of the Bankruptcy Code (the "First Chapter 15 Petition")[2] seeking recognition of the Australian Proceeding.  Drawbridge appeared and filed its Objection to the First Chapter 15 Petition on August 30, 2012 (the "First Chapter 15 Petition Objection"),[3] asserting, among other things, (i) that Octaviar had no domicile, place of business, or property in the United States as required by section 109(a) of title 11 of the United States Code (the "Bankruptcy Code")[4] and (ii) that chapter 15 could not be used solely for discovery in aid of a foreign proceeding.[5]  The Foreign Representatives filed their response on September 5, 2012 (the "First Chapter 15 Petition Reply").[6]  On September 6, 2012, after hearing argument, this Court overruled Drawbridge's objection and entered an order granting recognition of the Australian Proceeding as a foreign main proceeding pursuant to 11 U.S.C. § 1515 (the

---

[1]        *Octaviar II*, Docket No. 14.
[2]        *Octaviar I*, Docket No. 1.
[3]        *Octaviar I*, Docket No. 13.
[4]        Section 109(a) of the Bankruptcy Code provides, "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title."  11 U.S.C. § 109(a).
[5]        *Octaviar I*, Sept. 6, 2012 Tr. [Docket No. 20] at 31:7-13.
[6]        *Octaviar I*, Docket No. 16.

"Recognition Order").[7]  In granting recognition, the Court concluded, among other things, that there was no requirement that an entity that is the subject of a foreign proceeding be domiciled or have a residence, place of business, or property in the United States in order for the foreign proceeding to be recognized under chapter 15.  On September 20, 2012, Drawbridge filed a notice of appeal of the Recognition Order.[8]

On October 5, 2012, the Foreign Representatives filed a motion seeking leave to conduct discovery from Drawbridge and other parties pursuant to sections 105(a), 1507(a) and 1521(a)(4) and (7) of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure.[9] Drawbridge filed an objection to the Foreign Representatives' discovery motion on October 5, 2012,[10] and, on October 9, 2012, it filed a motion seeking a stay pending appeal.[11]  On October 16 and 17, 2012, the Foreign Representatives filed replies to Drawbridge's motions,[12] to which Drawbridge filed further replies on October 19, 2012.[13]

On November 28, 2012, this Court granted a joint application from Drawbridge and the Foreign Representatives for certification of the Recognition Order for direct appeal to the United States Court of Appeals for the Second Circuit (the "Second Circuit") pursuant to 28 U.S.C. §§ 158(d)(2)(A)(i), (A)(iii), and (B)(i), and issued an opinion explaining its decision.[14]  On December 10, 2012, this Court denied Drawbridge's motion for a stay pending appeal[15] and, on

---

[7]        *Octaviar I*, Docket No. 18.
[8]        *Octaviar I*, Docket No. 21.
[9]        *Octaviar I*, Docket No. 27.
[10]       *Octaviar I*, Docket No. 33.
[11]       *Octaviar I*, Docket No. 29.
[12]       *Octaviar I*, Docket Nos. 33, 34, and 35.
[13]       *Octaviar I*, Docket Nos. 40 and 41.
[14]       *Octaviar I*, Memorandum Opinion in Support of Certification of Direct Appeal to the Court of Appeals for the Second Circuit [Docket No. 47].
[15]       *Octaviar I*, Docket No. 49.

December 12, 2012, in accordance with the Recognition Order, this Court issued an order

granting the Foreign Representatives' discovery motion (the "Discovery Order").[16]

Shortly thereafter, on December 21, 2012, the parties filed a joint application with the

Second Circuit for direct appeal of the Recognition Order.[17]  On February 21, 2013, the Second

Circuit granted the joint application and issued a stay of the Discovery Order pending resolution

of the appeal.[18]  The principal issue on appeal was whether a petitioner in a chapter 15 case is

required to demonstrate that the foreign debtor "resides, or has a domicile, place of business, or

property in the United States" as a condition to obtaining recognition of a foreign main

proceeding under sections 1515 and 1517 of the Bankruptcy Code.  *Drawbridge Special*

*Opportunities Fund LP v. Katherine Elizabeth Barnet (In re Barnet)*, 737 F.3d 238, 246 (2d Cir.

2013) ("*Barnet*").

On December 11, 2013, the Second Circuit issued its decision, holding for the first time

that a debtor that is the subject of a foreign proceeding must meet the requirements of section

---

[16]     *Octaviar I*, Docket No. 51.  The Foreign Representatives later abandoned discovery pursuant to the Discovery Order and instead pursued discovery under 28 U.S.C. § 1782(a), which provides for discovery "for use in a proceeding in a foreign or international tribunal."  *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011); *see also* Stipulation and Order, *In re Application of Barnet*, 13-Misc.-214 (S.D.N.Y. Sept. 17, 2013) [Docket No. 32] (lifting the stay of the Order Granting *Ex Parte* Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782, dated June 21, 2013 (the "Section 1782 Order") and requiring the parties to (a) proceed with discovery pursuant to the Section 1782 Order and the subpoenas issued by the Foreign Representatives thereunder and (b) meet and confer to discuss and attempt to reach agreement on a discovery protocol).

[17]     Joint Petition for Permission for Direct Appeal, *Drawbridge Special Opportunities Fund LP v. Katherine Elizabeth Barnet and William John Fletcher, as Liquidators of Octaviar Administration Pty Ltd*, Case No. 12-5023 (2d Cir. Dec. 21, 2012) [Docket No. 1].

[18]     *Octaviar I*, Copy of Order from Second Circuit [Docket No. 55].  In granting the joint application and issuing a stay of the Discovery Order, the Second Circuit first considered whether Drawbridge was permitted to appeal from the Recognition Order.  *Drawbridge Special Opportunities Fund LP v. Katherine Elizabeth Barnet (In re Barnet)*, 737 F.3d 238, 242 (2d Cir. 2013).  Reviewing the issue of appellate standing *de novo*, the Second Circuit found that the Recognition Order was not appealable by Drawbridge when it was issued because the Recognition Order only subjected Drawbridge to potential future harm insufficient to justify appellate standing.  *Id.* at 243. Despite concluding that the Recognition Order was not itself appealable because Drawbridge was not directly affected by the relief the Recognition Order provided, the Second Circuit concluded that the Discovery Order was a final order, and therefore immediately appealable by Drawbridge, such that the Second Circuit had jurisdiction over the appeal of the Discovery Order.  *Id.* at 244.  Because the Discovery Order caused the "premature notice of appeal" from the Recognition Order to "ripen into a valid notice of appeal," the Second Circuit reasoned, the Discovery Order brought the Recognition Order up for review.  *Id.* at 244-246.

109(a) of the Bankruptcy Code before a bankruptcy court may grant recognition of the foreign proceeding.  *Id*. at 247.  Because the Second Circuit found that the Foreign Representatives "made no attempt to establish that Octaviar had a domicile, a place of business or property in the United States" (*id*.), the court vacated the Recognition Order and remanded the case to this Court for further proceedings.  *Id*. at 50.

Pursuant to the Second Circuit's direction, this Court held a status conference on February 5, 2014, at which counsel for the Foreign Representatives informed the Court that the Foreign Representatives intended to pursue their request for recognition of the Australian Proceeding as a foreign main proceeding;[19] accordingly, the Court entered an order permitting additional briefing on the Foreign Representatives' renewed request for recognition.[20]  The Foreign Representatives subsequently determined not to pursue recognition of the First Chapter 15 Petition.  Instead, on February 27, 2014, the Foreign Representatives commenced *Octaviar II* by filing the Second Chapter 15 Petition, seeking recognition of the Australian Proceeding.[21]

On March 30, 2014, Drawbridge filed its Objection to Alleged Foreign Representatives' Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding, or, in the Alternative, For Dismissal of the Proceeding Upon Recognition Pursuant to Section 305 of the Bankruptcy Code, *Octaviar II* [Docket No. 12] (the "Second Chapter 15 Petition Objection") arguing, among other things, that (i) Octaviar failed to satisfy the requirements of section 109(a)

---

[19]      *Octaviar I*, Feb. 5, 2014 Tr. [Docket No. 61] at 16-22.  Drawbridge argues in its Second Chapter 15 Petition Objection that, at the February 5, 2014 hearing, the Foreign Representatives never disclosed to the Court or to Drawbridge that they intended to file a new chapter 15 petition.  (*Octaviar II*, Second Chapter 15 Petition Objection [Docket No. 12] at 1, 14-18.)  However, in discussing a renewed application for recognition, the Court asked counsel for the Foreign Representatives, whether, from a procedural perspective, they intended to bring a new motion or an amended motion seeking an order granting recognition.  Counsel for the Foreign Representatives stated that they expected to file a supplemental memorandum of law in support of recognition and a supplemental fact affidavit detailing the property that Octaviar has in the United States, but they reserved their right to consider the issue more extensively.  (*Octaviar I*, Feb. 5, 2014 Tr. [Docket No. 61] at 11:1-10.)
[20]      *Octaviar I*, Docket No. 60.
[21]      *Octaviar II*, Docket No. 1.

of the Bankruptcy Code as of the filing of the First Chapter 15 Petition; (ii) the Second Chapter 15 Petition should be dismissed as an abuse of process; and (iii) even if recognition is granted, the Court should immediately dismiss the instant case to further the objectives of chapter 15 pursuant to section 305(a)(2) of the Bankruptcy Code.[22]   On April 9, 2014, the Foreign Representatives filed the Second Chapter 15 Petition Reply, arguing, among other things, that (i) Octaviar satisfies the eligibility requirements of section 109(a); (ii) the Second Chapter 15 Petition was filed for a proper purpose; and (iii) there is no basis to dismiss the Second Chapter 15 Petition under section 305(a)(2) of the Bankruptcy Code.[23]   On April 10, 2014, after the matter had been fully briefed, the Court heard argument with respect to the Second Chapter 15 Petition.  *Octaviar I* remains pending before this Court.[24]

## DISCUSSION

The Foreign Representatives seek recognition of the Australian Proceeding as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code.[25]   Recognition of a foreign main proceeding is governed by sections 1515 through 1524 of the Bankruptcy Code. *Barnet*, 737 F.3d at 247 (citing *Morning Mist Holding Ltd. v. Krys (In re Fairfield Sentry, Ltd.)*, 714 F.3d 127, 132 (2d Cir. 2013)).  Pursuant to section 1517 of the Bankruptcy Code, the court grants recognition to a foreign proceeding so long as (1) the proceeding is a "foreign main proceeding or foreign nonmain proceeding" as defined by 11 U.S.C. § 1502; (2) "the foreign

---

[22]     *Octaviar II*, Docket No. 12.  11 U.S.C. § 305(a)(2) provides that a court may, after notice and a hearing, dismiss or suspend a bankruptcy case if a chapter 15 petition has been granted and "the purposes of Chapter 15 of this title would be best served by such dismissal or suspension."  11 U.S.C. § 305(a)(2).

[23]     *Octaviar II*, Docket No. 14.

[24]     The Foreign Representatives stated in the Second Chapter 15 Petition that they will "promptly request the dismissal of [*Octaviar I*] should this Court enter an order granting recognition to the Australian Proceeding as a foreign main proceeding under chapter 15."  (*Octaviar II*, Second Chapter 15 Petition [Docket No. 1] at ¶ 43.)

[25]     Section 1502(4) provides that "the term 'foreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).  A "foreign proceeding" is a "collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).  "Debtor" is defined "[f]or the purposes of this chapter [15]," as "an entity that is the subject of a foreign proceeding."  11 U.S.C. § 1502(1).

representative applying for recognition is a person or body;" and (3) the petition for recognition

meets the requirements of 11 U.S.C. § 1515.   11 U.S.C. § 1517(a); *Barnet*, 737 F.3d at 248

(citing *Morning Mist Holding Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d at 132-133); *In*

*re Bear Stearns High-Grade Structured Credit Strategies Master Fund Ltd.*, 374 B.R. 122, 126-

127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).  As determined by this Court

in *Octaviar I*, and not challenged by Drawbridge either in that proceeding or the instant case,

Octaviar satisfies the requirements of section 1517 of the Bankruptcy Code.  Rather, Drawbridge

argues that Octaviar did not, as of the First Chapter 15 Petition, satisfy the eligibility

requirements set forth in section 109(a) of the Bankruptcy Code, which the Second Circuit

subsequently ruled in *Barnet* applies to a foreign debtor seeking recognition under chapter 15 of

the Bankruptcy Code.[26]

In *Barnet*, a matter of first impression, the Second Circuit found that section 109(a)

applies in a case under chapter 15 of the Bankruptcy Code.  *Barnet*, 737 F.3d at 238.  Section

109(a) provides that "[n]otwithstanding any other provision of this section, only a person that

resides or has a domicile, a place of business, or property in the United States, or a municipality,

may be a debtor under this title."  11 U.S.C. § 109(a).  Highlighting the "straightforward nature

of [its] statutory interpretation," the Second Circuit reasoned that section 103(a) of title 11 makes

all of chapter 1 applicable to chapter 15, as section 103(a) provides that, "other than for an

exception not relevant here, [c]hapter 1 'of this title . . . app[lies] in a case under chapter 15.'"

*Barnet*, 737 F.3d at 248.  Therefore, the court explained, "by the plain terms of the statute,"

section 109, which appears in chapter 1 of title 11 and which creates a requirement that must be

met by any debtor, applies in a case under chapter 15.  *Id*.  The Second Circuit reasoned, further,

---

[26]    *See Octaviar I*, Sept. 6, 2013 Tr. [Docket No. 20] at 7:1-25; 33:7-13.  The only contested issue in *Octaviar
I* was whether Octaviar had property located in the United States.  *See Octaviar I*, Sept. 6, 2013 Tr. [Docket No. 20]
at 7:1-25.

that all of the stated purposes of chapter 15 (international cooperation; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies; protection and maximization of the value of the debtor's assets; and facilitation of the rescue of financially troubled businesses) could be accomplished with or without the imposition of section 109(a), and, therefore, do not override the application of section 109(a) to a foreign debtor seeking recognition under chapter 15. *Barnet*, 737 F.3d at 250-51. In accordance with *Barnet* and the purpose of chapter 15 to foster international judicial cooperation in cases involving cross-border insolvency, once a foreign representative has made a showing that the debtor has a domicile, place of business, or property in the United States, and has met the other requirements set forth in 11 U.S.C. § 1517, recognition should be granted.[27]

A.     **Octaviar has Property in the United States as Required by Section 109(a)**

       (i)     **Octaviar Has Property in the United States in the Form of Claims and Causes of Action**

       Octaviar has property in the United States in the form of claims or causes of action against Drawbridge and other U.S. entities. It is well established that claims and causes of action, though intangible, constitute "property." *See, e.g., Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989) (stating that property of the estate includes "all interests, such as . . . tangible and intangible property [and] causes of action" (citing H. R. Rep. No. 595, 95th Cong., 2d Sess. 175, *reprinted* in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6136 (grammatical changes in original))); *Winick & Rich P.C. v. Strada Design Assocs., Inc. (In re Strada Design Assocs., Inc.)*, 326 B.R. 229, 235 (Bankr. S.D.N.Y. 2005) ("Without doubt, causes of action that accrue under state law prior to the filing of a bankruptcy petition become property of the estate. In

---

[27]     Pursuant to 11 U.S.C. § 1506, the court may refuse to take action under chapter 15 if the action would be manifestly contrary to the public policy of the United States. Drawbridge has not argued that recognition of the Australian Proceeding would be contrary to public policy.

addition, causes of action that accrue as a result of the filing are property of the estate." (internal quotations and citations omitted)).

The Foreign Representatives have met their burden to establish the existence of Octaviar's property in the form of claims or causes of action in the United States; indeed, the Foreign Representatives made it abundantly clear in the First Chapter 15 Petition that, in furtherance of their primary goal of marshaling Octaviar's assets and making distributions to creditors, they were requesting recognition "to investigate potential assets in the United States in the form of claims or causes of action against entities located in the United States and, if necessary, to prosecute these claims in the United States."[28]  The Foreign Representatives also stated that they sought recognition of the Australian Proceeding, among other things, to ensure, without the need for further protracted litigation, that they had standing to pursue the claims or causes of action.[29]  Consistent with their statements, and prior to filing the Second Chapter 15 Petition, the Foreign Representatives have more specifically identified causes of action and commenced litigation against Drawbridge and other related U.S. entities in both the United States District Court for the Southern District of New York[30] and in New York State Supreme Court.[31]

Drawbridge objects to recognition of the Australian Proceeding pursuant to the *Second* Chapter 15 Petition, arguing that the Foreign Representatives still fail to satisfy the requirements of section 109(a) of the Bankruptcy Code because, as of the filing of the *First* Chapter 15

---

[28]     *Octaviar I*, First Chapter 15 Petition Reply [Docket No. 16] at ¶¶ 5, 16; *see also Octaviar I*, First Chapter 15 Petition [Docket No. 1] at ¶¶ 37, 42; *Octaviar I*, Sept. 6, 2012 Tr. [Docket No. 20] at 27:25-28:7; Octaviar *I*, Feb. 5, 2014 Tr. [Docket No. 61] at 4:14-24; *Octaviar II*, Second Chapter 15 Petition Reply [Docket No. 14] at 4.

[29]     *Octaviar II*, April 10, 2014 Tr. [Docket No. 16] at 7:6-8:23.

[30]     *See Katherine Elizabeth Barnet and William John Fletcher, as Liquidators of Octaviar Administration Pty Ltd (in Liquidation) v. Drawbridge Special Opportunities Fund LP, et al.*, Civ. No. 14-1376 (S.D.N.Y. Feb. 27, 2014) (the "Federal Court Action").

[31]     *See Katherine Elizabeth Barnet and William John Fletcher, as Liquidators of Octaviar Administration Pty Ltd (in Liquidation) v. Drawbridge Special Opportunities Fund LP, et al.*, Index No. 650656/2014 (N.Y. Sup. Ct. Feb. 28, 2014) (the "State Court Action").

Petition, Octaviar's claims were merely "potential future causes of action" which, Drawbridge alleges, do not constitute property." (Second Chapter 15 Petition Objection at 11.) At least as of the filing of the Second Chapter 15 Petition, however, Octaviar possessed property in the form of claims or causes of action sufficient to satisfy section 109(a) of the Bankruptcy Code. Although it would appear that the causes of action predated the first filing, at the time of the Second Chapter 15 Petition, the complaints had already been filed in the Federal Court Action and the State Court Action.[32] As such, the Foreign Representatives met their burden to demonstrate that Octaviar possesses property in the United States sufficient to satisfy the eligibility requirements of section 109(a).

Drawbridge cites *In re Head*, 223 B.R. 648 (Bankr. W.D.N.Y. 1998), for the proposition that "potential" causes of action in the United States cannot satisfy the requirements of section 109(a). However, the court in *Head* merely held that a debtor's claim to certain funds allegedly located in the United States was "too tenuous, too inchoate, and too contrived" to constitute property in the United States under section 109(a). *Id.* at 652. Moreover, Drawbridge's arguments, including its so-called "abuse of process" claim, amount to a procedural "Catch-22" in which the Foreign Representatives do not deserve to be caught, to wit: since the Foreign Representatives did not identify existing causes of action or other property in the First Chapter 15 Petition, now that the Foreign Representatives have properly obtained discovery and alleged the existence of causes of action in the Second Chapter 15 Petition, this Court should refuse to grant recognition. What Drawbridge characterizes as gamesmanship is rather simply the effort undertaken by the Foreign Representatives to bring claims against a defendant attempting at all costs to avoid meeting such claims on the merits.

---

[32]    *Supra* notes 30 and 31.

Drawbridge further argues that, even if the claims or causes of action are "property" within the meaning of section 109(a) of the Bankruptcy Code, such claims or causes of action do not constitute property "in the United States."  Relying on a *Fairfield Sentry* decision by Judge Lifland, Drawbridge argues that Octaviar's causes of action should be deemed located in Australia because causes of action, as intangible assets, are located where the plaintiff, rather than the defendant, is domiciled.  *See In re Fairfield Sentry Ltd*, 484 B.R. 615 (Bankr. S.D.N.Y. 2013) ("*Fairfield Sentry*").[33]  But Judge Lifland made clear in *Fairfield Sentry* that the situs of intangibles depends upon a "common sense appraisal of the requirements of justice and convenience" in the particular circumstance at issue.  *Fairfield Sentry*, 484 B.R. at 624 (citing *Severnoe Sec. Corp. v. London and Lacashire Insur. Co.*, 255 N.Y. 120, 123-24 (1931)); *see also Bankers Trust Co. v. Equitable Life Assur. Soc'y of U. S.*, 19 N.Y.2d 552, 556-57 (N.Y. 1967) ("Stated another way, [determining the situs of intangibles] is fundamentally a question of ease of administration and of equity.").  In determining the location of a SIPA Claim at issue in that case, which was governed by New York law, Judge Lifland cited the flexible test annunciated in *Severnoe Securities Corporation*, 255 N.Y. at 123-24, and reasoned that, because the BVI Court held the paramount interest in the sale of the SIPA Claim at issue and because there were no interests unique to the U.S. parties involved, justice, convenience, and common sense dictated that the SIPA Claim should be deemed located outside the territorial jurisdiction of the United States.  Accordingly, the court held that the sale of the SIPA Claim did not involve a section 1520(a)(2) transfer requiring a section 363 review.  *Id*. at 623-25.

---

[33]    This is not the *Fairfield Sentry* decision affirmed by the Second Circuit in *Morning Mist Holding Ltd. v. Krys (In re Fairfield Sentry, Ltd.)*, 714 F.3d 127 (2d Cir. 2013).  Rather, this decision was affirmed by the District Court (*see* Order Affirming Decision of Bankruptcy Court, *Kenneth Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, No. 13-Civ. 1524 (AKH) (S.D.N.Y. July 3, 2013) [Docket No. 15]) and is now pending in the Second Circuit.  (*See* Notice of Appeal, *Kenneth Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, No. 13-Civ. 1524 (AKH) (S.D.N.Y. Aug. 2, 2013) [Docket No. 19].)

The circumstances in *Fairfield Sentry* are readily distinguishable from those here, where the Foreign Representatives have asserted claims under U.S. law that involve defendants located in the United States and include allegations that certain funds were wrongfully transferred by Drawbridge and other U.S. entities to the United States. Although the causes of action that the Foreign Representatives assert in the Federal Court Action and the State Court Action may be related to the transactions and issues in the Australian Litigation, they do not involve the same parties.[34]  As a general matter, where a court has both subject matter and personal jurisdiction, the claim subject to the litigation is present in that court. *See In re British Am. Ins. Co. Ltd.*, 488 B.R. 205, 231-32 (Bankr. S.D. Fla. 3013); *In re Iglesias*, 226 B.R. 721, 723 (Bankr. S.D. Fla. 1998).

The Court concludes that because Octaviar's claims and causes of action against Drawbridge constitute property located in the United States, the Foreign Representatives satisfy the eligibility requirements of section 109(a) of the Bankruptcy Code.

**(ii)    Octaviar Has Property in the United States in the Form of a Retainer**

Although the Court need not reach the issue, Octaviar also has property in the United States in the form of an undrawn retainer in the possession of the Foreign Representatives' counsel.  On January 24, 2014, prior to the filing of the Second Chapter 15 Petition, the Foreign Representatives established a retainer with their counsel, Chadbourne & Parke LLP, by depositing USD$10,000 in a non-interest bearing client trust account with JPMorgan Private

---

[34]    The Australian Litigation involves claims against FCCA2 and FIGA, whereas the Federal Court Action and State Court Action involve claims against Drawbridge and other U.S. entities. *See Octaviar II*, April 10, 2014 Tr. [Docket 16] at 31:5-32:11; *see also Katherine Elizabeth Barnet and William John Fletcher, as Liquidators of Octaviar Administration Pty Ltd (in Liquidation) v. Drawbridge Special Opportunities Fund LP, et al.*, Civ. No. 14-1376 (S.D.N.Y. Feb. 27, 2014); *Katherine Elizabeth Barnet and William John Fletcher, as Liquidators of Octaviar Administration Pty Ltd (in Liquidation) v. Drawbridge Special Opportunities Fund LP, et al.*, Index No. 650656/2014 (N.Y. Sup. Ct. Feb. 28, 2014).

Bank in New York (the "Client Trust Account").[35]  Drawbridge does not dispute that the funds in

the Client Trust Account constitute property in the United States pursuant to section 109(a) of

the Bankruptcy Code.  Nor does Drawbridge dispute that such funds were in the Client Trust

Account at the time the Foreign Representatives filed the Second Chapter 15 Petition.  Rather,

Drawbridge argues that transferring funds to the Client Trust Account was an improper or bad

faith attempt to "manufacture eligibility" to file for recognition under chapter 15 and to evade the

consequences of the Second Circuit's decision in *Barnet*.  (Second Chapter 15 Petition Objection

at 4.)

Notably, Drawbridge concedes that prepetition retainers and transfers of property can

serve as a basis for section 109(a) compliance and do not, in and of themselves, constitute

grounds for a finding of bad faith.  (Second Chapter 15 Petition Objection at 12.)  There is a line

of authority that supports the fact that prepetition deposits or retainers can supply "property"

sufficient to make a foreign debtor eligible to file in the United States.  *See, e.g., In re Cenargo

Int'l PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003); *In re Yukos Oil Co.*, 321 B.R. 396, 401-03

(Bankr. S.D. Tex. 2005); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del.

2000).  Drawbridge alleges that the facts and circumstances here demand a different result

because "the post-petition retainer was not paid to provide some legitimate economic function,

but to game the requirements of section 109(a) to avoid dismissal of the First Chapter 15

Petition."  (Second Chapter 15 Petition Objection at 13-14.)  A retainer paid to counsel has an

obvious legitimate economic function, understood by every practicing attorney.

Courts have been careful to recognize that the existence of minimal property in the

United States does not necessarily mean that a domestic case should be sustained.  For example,

---

[35]    Under the terms of the letter agreement governing the retainer, Chadbourne & Parke LLP is permitted to apply the funds in the Client Trust Account only to outstanding invoiced amounts and only at the Foreign Representatives' discretion.  (*Octaviar II*, Second Chapter 15 Petition [Docket No. 1] at ¶ 7.)

in *Yukos Oil*, the court found that Yukos, one the largest petroleum products oil and gas providers in Russia, met the requirements of section 109(a) even though it had created a new entity in the United States and transferred funds to that entity only hours prior to filing for bankruptcy protection, but subsequently dismissed the case on the grounds that a chapter 11 reorganization could not be sustained in the absence of participation by the Russian government. *In re Yukos Oil Co.*, 321 B.R. at 411.   In *Global Ocean Carriers*, the court found, over the objection by a dissident Greek shareholder who sought to acquire the debtor, that the debtor possessed property in the United States in the form of bank accounts and thus was eligible to file for chapter 11, but denied the debtor's motion for confirmation of the modified first amended plan of reorganization, finding, among other things, that the debtor failed to meet its burden under section 1129(a)(7) of the Bankruptcy Code to show that the plan was in the best interests of creditors.  *In re Global Ocean Carriers, Ltd.*, 251 B.R. at 37-46.

The Court finds that the Foreign Representatives acted in good faith in transferring the funds to the Client Trust Account.  In any event, as the Second Circuit emphasized in *Barnet*, the Court must abide by the plain meaning of the words in the statute.  Section 109(a) says, simply, that the debtor must have property; it says nothing about the amount of such property[36] nor does it direct that there be any inquiry into the circumstances surrounding the debtor's acquisition of the property, and is thus consistent with other provisions of the Code that reject lengthy and contentious examination of the grounds for a bankruptcy filing.[37]   The imposition of a requirement that property in the United States be "substantial," for example, would subvert the

---

[36]    *See, e.g., In re McTague*, 198 B.R. 428, 429 (Bankr. W.D.N.Y. 1996) (rejecting a chapter 7 trustee's motion to dismiss the case on the basis that funds deposited in the United States by the debtor in an attempt to subvert Canadian jurisdiction were insufficient to rise to the level of property required by section 109(a) of the Bankruptcy Code, and holding that the court was without authority to examine the requisite quantity under section 109(a)).

[37]    As an example, there is no requirement in the Bankruptcy Code that a debtor be insolvent or prove insolvency.

intent of Congress and the plain meaning of the statute.  In appropriate cases – not this one – there is ample authority under section 305 of the Bankruptcy Code to dismiss or abstain in a case that should not be kept here.

The Court finds that, in addition to property in the form of claims and causes of action, Octaviar had property in the United States in the form of a retainer prior to the filing of the Second Chapter 15 Petition that is sufficient to satisfy the requirements of section 109(a) of the Bankruptcy Code.

**B.  The Policy and Purposes of Chapter 15 Would Be Undermined if the Foreign Representatives Were Deprived of an Opportunity to Bring Causes of Action on Behalf of Octaviar for the Benefit of its Creditors**

It must be emphasized that denial of recognition of the foreign proceeding might deprive the Foreign Representatives of the opportunity to bring a cause of action in the United States. Drawbridge complains that that the Foreign Representatives are pursuing causes of action in the United States that are based on the same factual predicates and legal grounds as those asserted in the Australian Litigation (albeit not against Drawbridge).  Their arguments are in the nature of a *forum non conveniens* defense.  They can bring such a motion if they are so inclined.  *See Windt v. Qwest Comm'ns Int'l, Inc.*, 529 F.3d 183 (3d Cir. 2008).  However, they have assiduously refused to consent to jurisdiction in Australia, which would invalidate a *forum non conveniens* defense.  Indeed, it is precisely because the Foreign Representatives cannot bring these claims in Australia that relief here may be necessary: Drawbridge is apparently not subject to, and refuses to consent to, the jurisdiction of the Australian court.  Moreover, if there is a meritorious basis for a stay of the Federal Court Action or State Court Action, Drawbridge is free to attempt to convince those courts to enter a stay.  Recognition of the Australian Proceeding will not prejudice Drawbridge or abridge its rights to assert all available defenses it has in the Federal

17

Court Action and the State Court Action, including arguments that the causes of action are duplicative or derivative of those being litigated in Australia.

Courts have frequently expressed concern that the recognition provisions of chapter 15 not be used by a defendant who is attempting to evade its legitimate foreign creditors. *See, e.g., Morning Mist Holding Ltd. v. Krys (In re Fairfield Sentry, Ltd.)*, 714 F.3d 127, 132 (2d Cir. 2013); *In re Ran*, 390 B.R. 257 (S.D. Tex. 2008). To deny recognition might be to deny the Foreign Representatives of their common law rights as trustees to bring an action in order to assert claims on behalf of beneficiaries. *See Clarkson Co. Ltd. v. Shaheen*, 716 F.2d 126 (2d Cir. 1983).[38] Granting recognition here is consistent with such rights and will facilitate the Foreign Representatives' ability to bring causes of action they properly identified for the benefit of creditors.

On the other hand, granting recognition of the Australian Proceeding is squarely consistent with the goals of chapter 15 enumerated in section 1501 of the Bankruptcy Code, which states:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of –
> (1) cooperation between –
>      (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; . . .
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor; [and]
> (4) protection and maximization of the value of the debtor's assets.

---

[38]    There is authority that a foreign representative cannot bring broad litigation in the United States without first obtaining an order of recognition under chapter 15. *See* 11 U.S.C. § 1509(b); *United States v. J.A. Jones Constr. Group, LLC*, 333 B.R. 637 (E.D.N.Y. 2005); *Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, 2010 WL 1779282, at *5 (S.D.N.Y. Apr. 29, 2010).

11 U.S.C. § 1501.  Consistent with these purposes, the Foreign Representatives seek recognition of the Australian Proceeding, among other things, to ensure that they have the ability and capacity to pursue properly identified claims and causes of action against Drawbridge and other U.S. entities in the United States.  Granting recognition of the Australian Proceeding undoubtedly facilitates and promotes cooperation between the courts in the United States and in Australia.  Moreover, and in furtherance of the goals of chapter 15, granting recognition will foster the fair, efficient, and timely administration of the Octaviar insolvency, and possibly, depending on the merits, assist in protecting the interests of Octaviar and maximizing the value of Octaviar's assets for the benefit of its creditors.

## CONCLUSION

Based on the foregoing, the relief requested in the Second Chapter 15 Petition is granted. The parties are directed to submit an order granting recognition to the Australian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.


IT IS SO ORDERED.

Dated: New York, New York
       June 19, 2014

                                        /s/ Shelley C. Chapman
                                        UNITED STATES BANKRUPTCY JUDGE

19